## JAMES H. HACKETT *v.* JOHN RICHARDS. (*a*)

Whether an allegation of the complaint can be put in issue by a denial "upon information and belief," considered, but not decided by the court *in banco;* INGRAHAM, FIRST J., at general term, affirming the proposition and holding, that where a defendant is informed and believes an averment is untrue, but cannot positively deny it nor conscientiously affirm that he has no knowledge nor information in respect to it sufficient to form a belief, the answer may set up a denial, upon information and belief, although this form of pleading be not in terms allowed by the 149th section of the Code of Procedure. DALY, J., at special term, *contra;* WOODRUFF, J., not passing upon the point.

In an action for a breach of covenant, an averment in the complaint of the *amount* of damages, is not the proper subject of a denial. It is not issuable matter, and the defendant does not admit the amount alleged, by neglecting to deny it. (*b*)

---

(*a*) NOTE BY REPORTER.—Since this case was prepared for publication, it has been reviewed in the court of last resort, and the judgment has been reversed, on the

---

(*b*) In reference to this and the two succeeding propositions, see *Connoss* v. *Meir*, 2 E. D. Smith, 314.

The denial should be of the breach; for it follows as matter of law, that if the cove-
nant is broken, the plaintiff is entitled to damage, and if not, that he is not so en-
titled. The amount is not traversable, and must be proved, whether denied or not.
*It seems,* that even on default, the amount of damage must be proved, or the
plaintiff take judgment for a merely nominal sum.

Where premises were demised for one year, "at the yearly rent of $500 (and
Croton water tax), for the said term, payable quarterly," and the lease con-
tained, in addition to the above words, a distinct covenant to pay the regular
annual rent or charge which might be assessed, according to law, for the Croton
water; *held,* that the amount of such assessment was not payable to the land-
lord, quarterly, in the same manner as the rent, but to the city authorities at
the time prescribed by law, and that in default of making such payment, the
tenant became liable to the landlord for the amount, and for any interest and
penalty incurred thereon, in case the latter assumed and paid the same. *Per*
WOODRUFF, J.; DALY, J. *concurring;* INGRAHAM, FIRST J. *dissenting.*

Where a lease provided, that in case of a breach of any covenant thereof, the
landlord might enter and relet the premises, applying the avails thereof, first,
to the expenses incurred in the re-entry, secondly, to the payment of the rent
due by the terms of the lease, and the balance, if any, to pay to the tenant, the
latter agreeing to make up any loss or deficiency during the residue of the
term; it was *held,* that the landlord, having taken possession of and relet the
premises during the term, was not entitled, in accounting to the first tenant for
the rent realized from the second, to make any deduction by reason of expen-
ditures for improvements of a permanent character, whereby the premises were
enhanced in value and an increased rent obtained on the reletting. INGRA-
HAM, FIRST J., and WOODRUFF, J., *concurring;* DALY, J., *dissenting.*

Under such circumstances, where one of the quarter days, designated in the
original lease, occurs intermediate the dispossession and the expiration of the
term, the lessee should be charged, in account with the landlord, the rent falling
due on such quarter day under the provisions of the lease, and should be credited
whatever has up to that time been paid by the new tenant, and either party is
thereupon entitled to recover any balance that on such accounting may be stated
in his favor, leaving a final settlement to be made at the end of the term, when it
may appear what amount is finally realized from the new tenant. And although,
*on the trial* of an action, brought by the landlord against the original lessee,
which trial takes place after the expiration of the term, the evidence shows that
the plaintiff, since the action was commenced and since the issue was joined,
has received from the new tenant the rent in full, yet, in giving judgment, the
rights of the parties must be determined as they existed when the suit was
brought, unless the defendant by supplemental answer sets up such receipt of
rent after suit brought as a defence arising after the former answer was put in
under § 177 of the Code. WOODRUFF and DALY, JJ., *concurring;* INGRAHAM,
FIRST J., *dissenting.*

---

ground that the recovery should have been for $35 40 only—instead of $85 40—to
wit, deficiency in rent, $25, water assessment, $8 40. The first four propositions,

Hackett *v.* Richards.

Action by a landlord against a surety, upon a lease, whereby a house and lot were let to one Abbott, "for the term of one year, to commence the first day of May, 1852, and to end on

---

stated in the above marginal notes, are not passed upon. The fifth and sixth are affirmed. In reference to the seventh, Judge Denio, delivering the opinion of the court, holds, in substance, first, that the covenant in the lease, that if the landlord should reënter and be unable to relet the premises or to obtain sufficient rent to make up the amount reserved, the lessee should pay "any and all loss or difference of rent for the residue of the term," does not apply, severally, to each quarterly payment, so as to allow a settlement between the landlord and the first lessee at the end of each quarter; but that, on the contrary, the first lessee could be compelled to account for and pay one final balance only, namely, the ultimate loss or difference of rent, to be ascertained by deducting the rent realized at the end of the term under the new lease, from the amount payable under the original lease: and, secondly, that the landlord could, nevertheless, prosecute an action at the end of the second quarter and before the expiration of the term, but that in so doing he must be taken to have assumed the risk of collecting the whole rent from the new tenant, as well as the amount yet to accrue when the suit was commenced, as the sum then already due, and that, therefore, the plaintiff, even in the present state of the pleadings, should be charged with the whole rent agreed to be paid by the new tenant up to the end of the term, although the same might not have been collected when the cause was tried and determined.

The decision of the Court of Appeals is reported in 3 Kernan, p. 138. The following are the marginal abstracts of the learned reporter and the opinion of the court:

"Where the lessee convenants, that if the lessor shall reënter during the term for condition broken, and shall be unable to relet the premises for a sum equal to the amount of the rent reserved, that he will pay the lessor the deficiency, and the lessor reënters and relets the premises for the residue of the term, he can only recover of the lessee the difference between the amount of the rent reserved by the original lease and the amount of all the rent realized during the term from the original lessee and the tenant to whom the premises were relet.

"And where the lessor, after a reëntry and a reletting of the premises, brings an action upon such covenant before the rent reserved from the tenant to whom he relet is due, he can only recover the deficiency which exists, after allowing the amount of this rent towards the rent reserved from the original lessee.

"Nor is such lessor entitled to any allowance, as against the original lessee, for expenditures made upon the premises after the reëntry, although thereby he was enabled to and did obtain more rent for the residue of the term from the tenant to whom he relet the premises."

Denio, J.—"If it were not for the special provision in the lease, the reëntry by

Hackett *v.* Richards.

the first day of May, 1853, at the yearly rent of five hundred dollars (and Croton water tax), for the said term, payable quarterly." The demise was in the exact words above quoted, and

the plaintiff would have put an end to the covenant of the lessee to pay rent. The parties were aware that this would be the legal consequence of a reëntry, and they undertook to make a conventional arrangement which would place them on a different footing. This court held in the case of *Gould* v. *Hall* (3 Kernan, 127), that such a provision in a lease was valid and enforceable after reëntry by the lessor. The plaintiff, by the terms of this lease, was to act as the agent of the lessee in again leasing the premises, and the latter was to pay 'all loss or difference of rent for the residue of the said term.' As a large portion of the term was unexpired when the plaintiff reëntered, and as the premises were again let, pursuant to the arrangement, for a period covering the entire residue of the defendant's original term, it is obvious that the 'loss or difference of rent' referred to would consist of the amount of the rent payable by the original lease which would remain after applying that which should be payable and which should be realized under the new lease for the remainder of the original term. If the new lease should prove unavailable to produce the rent payable by its terms, without fault on the part of the plaintiff in accepting the new tenant, or in enforcing payment, the loss would undoubtedly fall on the first lessee. This results from the agreement that the plaintiff should act as the agent of the lessee. But it could not be ascertained until the end of the year whether a loss would arise from this cause or not. When, therefore, the present action was commenced, it could not be truly affirmed that the loss or difference of rent referred to in the lease, would be greater than the difference between the amount of the old rent from the time the lessee had ceased to pay, and that which was reserved by the new lease from the time it commenced to the end of the term; and the facts which occurred after the commencement of the action show that this was the precise difference. If the plaintiff had been unwilling to run the risk of collecting the rent from the new tenant, he should have waited until that rent had fallen due and a default had occurred in paying it. By prosecuting this action pending the term, he must be taken to have assumed that the new rent would be paid, and to have sought to recover the difference between that rent and the rent which the first lessee agreed to pay. If he was willing to take that hazard, I see no objection to his having commenced this action, as he did, at the end of the second quarter. The amount of the deficiency which upon these principles he will be entitled to recover, is not as much as would have been recoverable under the former lease, from the time the lessee ceased to pay to the end of the second quarter; so that the defendant is not compelled to pay faster than he would have been by the terms of the primary covenants.

"The plaintiff is not entitled to be allowed for the improvements which he put upon the premises before leasing them the second time. The spirit of the agreement required him to lease again the same subject which he had demised to the

Hackett *v.* Richards.

was followed by two distinct covenants, on the part of the lessee, to the effect, first, that he would keep the premises in repair at his own expense; and secondly, that he would "pay the regular annual rent or charge, which is, or may be, assessed or imposed, according to law, upon the said house for the Croton water."

It was further provided, that if default should be made in the payment of the rent or in the performance of any of the covenants, or if the premises should become vacant during the term, the landlord might take possession under the act, entitled "Summary proceedings to recover the possession of land in other cases" (2 R. S. 512), or might reënter and thereupon relet the premises as the agent of the lessee, but in the landlord's name, applying the avails, first, to the payment of the expenses of reëntering, then to the payment of the rent reserved in the lease, and to pay the balance, if any, to the original lessee. The latter also agreed, that if the landlord should take such possession, and be unable to relet, or to obtain sufficient rent to make up the amount reserved, then the original lessee should pay any and all loss or difference of rent for the residue of the term.

---

first lessee. If he elected to make it more valuable, it was without any authority from the lessee or his surety, the defendant. They cannot complain, as they are not prejudiced by the improvements; and if they are benefited by them, it is an advantage which the plaintiff has chosen to confer upon them without any agreement or obligation on their part to reimburse him.

"I think the plaintiff was entitled to recover the Croton water rent. It was payable 1st May, 1852; and the lessee having failed to pay it, the plaintiff paid it for him, and is entitled to recover it from the surety.

"But the plaintiff was permitted to recover $85 40. This is considerably more than he was entitled to upon the principles already stated. Abbot was to pay $500, as rent for the year. Of this he paid the first quarter, being $125, before this suit was commenced. The plaintiff relet the premises for $350, which sum was actually paid him. Thus he received for the use of the premises during the year $475, leaving a deficiency of only $25, which sum, with the water tax, was. all he should have recovered.

"The judgment should, therefore, be reversed and a new trial ordered.

"MARVIN and HAND, JJ., also delivered opinions to the same effect.

"Judgment accordingly."

By an instrument at the foot of the lease, executed at the same time, the defendant, in consideration of the letting and of one dollar, became surety for the punctual payment of the rent and performance of the covenants to be paid and kept by Abbott, and promised, if default should be made therein, to pay any deficiency, and fully satisfy the conditions of the agreement, without requiring notice of non-payment or proof of demand.

During the second quarter, and about the 20th of August, the lessee, Abbott, was summarily dispossessed, for non-payment of the rent due on the first of that month, but which, as it appeared, was subsequently paid, before the action was commenced. The landlord, having resumed possession, relet the premises for seven months, from the first of October to the end of the original term, at the rate of $600 per annum. The new tenant was procured, at the advanced rent last mentioned, by the landlord consenting to make certain permanent improvements and repairs, consisting, principally of baths, and involving an expense of $200.

This suit was commenced in December, 1852. The complaint set out the lease and guaranty in full, and alleged a breach of the several covenants above referred to. The plaintiff claimed, first, a quarter's rent, $125, due November 1, 1852; secondly, damages, amounting, as was distinctly averred in the complaint, to $37 50, for a violation by the lessee of his agreement to repair; and thirdly, $8 paid by the landlord, in September, 1852, for the Croton water assessment, together with forty cents interest and penalty, it being alleged that the assessment was made upon the premises May 1, 1852, and that the lessee was bound by his covenant to pay it to the city authorities on that day.

The cause was tried in June, 1853, by the court, without a jury. The execution of the lease and agreement of surety, and the payment by the landlord of the Croton water tax and penalty or interest, being admitted, the plaintiff rested his case upon the pleadings.

In respect to the claim relative to repairs, the answer was as

follows: "This defendant, upon information and belief, denies that said William Abbott, during," etc. "did not keep the demised premises in good and sufficient repair," etc. "to the damage of the plaintiff to the sum of $37 50, or any other sum; and he denies that there is anything whatever due to the plaintiff from said Abbott or this defendant, on account of any such repairs as are mentioned in said complaint."

The allegation as to the Croton water assessment was answered, upon information and belief, by a simple denial of indebtedness on that account.

It appeared in evidence, that before the suit was commenced, the landlord had received from the new tenant, for one month, ending November 1, 1852, $50, and that, *during the litigation*, the new tenant had paid in full to the close of the term, May 1, 1853, at the rate of $600 per annum.

The following is the opinion of DALY, J. in giving judgment for the plaintiff, at special term:

"The assessment of the premises for the Croton water tax, from the 1st of May, 1852, to the 1st of May, 1853, the fact that it remained unpaid to the 1st of September, 1853, and that the plaintiff paid it, together with the penalty incurred by non-payment, in all eight dollars and forty cents, are averred in the complaint and not denied by the answer.

"The answer does not put in issue any of the above facts, but simply denies the conclusion of indebtedness.

"As respects this item, therefore, the plaintiff is clearly entitled to recover.

"That damages to thirty-seven dollars fifty cents had accrued to the plaintiff, by Abbott's suffering the premises to remain out of repair, is not denied in the form prescribed by the last amendment of the Code.

"It is denied, upon information and belief, which I think is not sufficient.

"Before the amendment a specific denial was required of each material allegation controverted by the answer, according to the defendant's knowledge, information, or belief, or of any

information thereof, sufficient to form a belief; but the Code now requires a general or specific denial of each material allegation, or else of any knowledge or information thereof, sufficient to form a belief.

"The clause allowing a defendant to deny according to his knowledge, information, or belief, has been stricken out, and I suppose the construction of the amended section now is, that the defendant must deny absolutely, without any qualification whatever, unless he can deny that he has neither knowledge nor information sufficient to form a belief.

"Where he cannot do this, as when he has knowledge or information and formed a belief, he must deny positively, for he cannot traverse the allegation now except in one of two modes.

"The intention of the legislature appears to have been to allow the defendant less latitude in traversing the complaint than heretofore, for they have designedly omitted the provision allowing a denial upon knowledge, information, and belief, and substantially reënacted the form prescribed when the code was first passed (Code of 1848, § 128), and which form must now be strictly followed.

"It is a matter of regret to be compelled to give this construction, as the plaintiff failed upon the trial to show that he had sustained any damage at all, and the effect of holding the answer insufficient in this respect is to conclude the defendant, by an admission on the record, that the plaintiff has sustained damage to the extent claimed.

"The plaintiff, it is true, now insists that he was unprepared upon the trial to prove his claim for damage, regarding the fact as admitted by the answer.

"Be that as it may, I can but regret that the change made by the legislature affords me no alternative but to hold that the mode of denial adopted by the defendant is not authorized by the statute, that the claim for damages is admitted and that the plaintiff is entitled to recover them.

"Abbott expressly covenanted in the lease, that, in the event of default in the payment of rent, the plaintiff might reënter

or take possession under the act authorizing summary proceedings, and in the event of his so taking possession, and being unable to relet the premises, that he would pay any loss or difference in the rent.

"But for this express undertaking on his part, the dispossessing of Abbott would have terminated the relation of landlord and tenant, and have discharged him and his surety from the payment of rent thereafter. (*Hinsdale* v. *White*, 6 Hill, 507; *McKeon* v. *Whiting*, 3 Denio, 452; *Zule* v. *Zule*, 24 Wend. 76.)

"He was bound, however, by the term of his covenant, to make good any deficiency in the rent that might arise from the plaintiff's inability, after he got possession, either to let the premises or to let them for the same rent that Abbott had covenanted to pay.

"The plaintiff relet them for the residue of the term, in his own name, which he was authorized to do by the lease from the 1st of October, 1852, to the 1st of May, 1853, at the rate of six hundred dollars a year, being one hundred dollars more per annum than the rent in the lease to Abbott, but the increase of rent was obtained, according to the testimony of Hackett, in consequence of his making repairs upon the premises to the extent of two hundred dollars.

"This expenditure for repairs reduced the amount of rent which Hackett received for the remaining seven months to one hundred dollars, nearly a hundred dollars less than Abbott was to pay, but he probably received a fair equivalent for the difference in the enhanced value of his building after the repairs were put upon it.

"But it is not material to go into that inquiry here.

"It is sufficient that, when this suit was commenced, in December, he had obtained no rent for the months of August and September, and I shall hold that for those two months he is entitled to recover at the rate reserved in the lease.

"A tender was made by the defendant, of the rent for the month of August, but it was made with the condition that the defendant was entitled to be discharged from all further

Hackett *v.* Richards.

liability for rent, in pursuance of an agreement entered into between the plaintiff and Abbott.

"This agreement, however, the defendant failed to prove.

"I shall, therefore, give judgment for the plaintiff for the two months' rent, $83 32; the Croton water tax and penalty, $8 40; and $37 50—in all $129 22."

The defendant appealed.

*Isaac Dayton*, for the defendant, made and argued the following points:

I. There was not any proof that Abbott, the lessee, did not keep the premises in repair, or that the plaintiff sustained damage to the amount of $37 50 or any other sum. The allowance of this amount in the judgment was therefore erroneous. Upon the pleadings either this issue is properly raised by the answer, or there is not any averment in the complaint to charge the defendant for these damages; as the allegation in the complaint as well as the denial in the answer, is on information and belief, and the Code does not authorize a complaint, any more than an answer, on information and belief. Code §§ 142, 149. But the Code, §157, sanctions statements on information and belief, and if the refinement adopted in *Truscott* v. *Dale*, 7 Howard's Prac. Rep. 221, that it is not necessary to distinguish in a pleading the allegations which are on information and belief from those which are on personal knowledge be resorted to; still the matter pleaded is good; the defect is in inserting the words "on information and belief," which would be cured by striking them out. One of the issues which the parties came to try was in respect to these damages and repairs, and the plaintiff having failed in this proof, judgment should not have been given for that money.

II. The plaintiff having dispossessed the lessee before the rent for the August quarter became due, and the relation of landlord and tenant thereby having ceased, as there cannot be any apportionment of rent, the plaintiff is not entitled to recover any rent for that quarter, not even for the time the lessee actu-

ally occupied the premises. (Bacon's Abridgment, title, "Rent, L.," and cases referred to in Judge Daly's opinion.) This position is not affected by the circumstance that Abbott, the lessee, covenanted to make up any deficiency of rent in case he should be dispossessed, and the landlord should relet. Because—A. The covenant on which the action is brought is the covenant to pay the rent quarterly. B. The covenant to make up deficiency had not been violated at the time the action was commenced, 7th December, 1852. The term of the lease was one year (fol. 10), and this covenant is to "pay to the said party of the first part, any and all loss or difference of rent for the residue of the said term." The plaintiff could not bring a suit on this covenant at the end of each quarter. C. There is not any issue on this covenant in the pleadings, and the court have no right to assume that in case an action should be brought on this covenant, the defendant would not have a valid defence therein.

III. If the court shall consider that the defendant is bound to establish in this action a defence not only to the covenant sued upon, but to the covenant to make up deficiency not sued upon, then the defendant contends—A. That he was a mere surety; that his obligation was *strictissimi juris;* that the plaintiff had not the right to do anything to increase or vary the rights of the defendant; and that his conduct in taking possession of the premises, holding them vacant for two months in order to make repairs, altering the building in making such repairs, and reletting the premises in his own name, not as agent for the lessee, and for his own interest and account, was such a variation of the contract with the lessee and with the defendant, and of the rights of the defendant, as discharged the defendant from liability on his covenant as surety. B. The rent contracted to be paid for the residue of the term is alone to be taken into account, in calculating the deficiency. The covenant is to pay all loss or difference of rent. The repairs properly, do not come into the estimate. The expenditure for repairs cannot be said to have reduced the amount of rent which Hackett received for the remaining seven months. The

deficiency, if it can be recovered in this suit, is only twenty-five dollars. C. The plaintiff, it is true, at the time of the commencement of this suit, had " obtained no rent for the months of August and September," but no deficiency " of rent for the residue of the term " had yet occurred. If the covenant to pay this deficiency is operative against this defendant before the expiration of the term, then the whole rent in respect to which the deficiency is to be calculated, should clearly be taken into the account.

IV. The covenant to pay the Croton water tax could only take effect at the expiration of the term.

If it is to be deemed payable in the spring, at the ordinary time for collecting this tax, then it was due as a part of the first quarter's rent; and it should have been sued for and recovered in the suit brought for that quarter's rent. The landlord could not sever the demand. Again, the payment of the Croton water tax is for the benefit of the whole term, and judgment should have been given at the utmost only for the share accrued during the time Abbott occupied the premises.

*C. Bainbridge Smith,* for the plaintiff, made and argued the following points :

I. The defendant became liable for the Croton water tax. The complaint alleges that the tenant " did not pay the regular annual rent or charge which was assessed upon said premises; that the said house was duly and regularly assessed for said Croton water the sum of eight dollars from the 1st of May, 1852, to the 1st of May, 1853 ; that the same was assessed on, *and became due and payable* on the said 1st of May, 1852; and the same remaining due and unpaid up to the 23d September, 1852, the plaintiff paid the same. The covenant in the lease is, that the tenant shall " pay the regular annual rent or charge which is or may be assessed or imposed according to law upon the said house or tenement for the Croton water." The answer merely denies that the defendant " is indebted to the plaintiff in the sum of $8 40 for assessment paid for Croton water for

said premises, together with interest from October 1st, 1852, as alleged in the complaint." Thus, it is admitted by the pleadings, it not being controverted by the answer, that the tenant so covenanted, that the amount paid was the annual rent or charge, and that it became due and payable on the 1st of May, 1852.

II. The defendant was sued for the quarter's rent due on first of November, 1852. The action was commenced on the 8th of that month. During the term the tenant was removed under the act entitled "Summary Proceedings," etc.; and by the terms and conditions of the lease, it is covenanted and agreed that in the event of such a removal, the landlord is to take possession of the premises, and thereupon relet the same in his own name, as the agent of the tenant, and apply the avails to the payment of the expenses of removal, and then to the payment of the rent due. And the question arises, was the rent in any manner suspended by such removal, or the plaintiff deprived of his right of action against the defendant during the term.

1. It would be idle to cite authorities in which it has been held an eviction of the tenant operates to suspend the rent. They would be applicable if there had been no agreement between the parties providing for such a removal.

2. By the terms of the contract between the parties, under seal, it is agreed that if default shall be made in the rent or any part thereof, the plaintiff shall and may take possession of the premises under the act entitled, "Summary proceedings to recover possession of land in other cases," (2 R. S. 512), and thereupon relet the same in his own name, and apply the avails first to the expense of reëntry, and then to the rent reserved by the lease.

3. It is also agreed that in the event of the landlord so taking possession, the tenant "should and would pay any and all loss or difference of rent for the residue of the term."

4. Parties have the right to waive any statutory provisions for their benefit, and extend their liability. It is so as to articles exempt from execution; and so under the former statute in

relation to *ft. fa.s*, the same could be issued within thirty days after the rendition of the judgment by the consent of the execution debtor. (*Kimball* v. *Munger*, 2 Hill, 364.)

5. It is rendered imperative on the part of the landlord to take possession. The covenant is that *he shall* take possession in case of default, and this might operate to the advantage of the surety. (1.) By the terms of the lease in question, the rent became due on the first day of November, and the tenant covenanted to pay the same. (2.) Default was made. (3.) The defendant became " surety for the punctual payment of the rent, and the performance of the covenants in the lease ;" and if default should be made therein, he promised and agreed to pay the plaintiff such sum or sums of money " as will be sufficient to make up such deficiency and fully satisfy the conditions of the said agreements." (4.) Could it have been intended that the tenant by his own wrong and neglect to make payment, should be thereby benefited by a suspension of the rent until the end of the term, and the landlord in the meantime deprived of his right of action against him or his surety ? What if the term had been twenty-one years ? Would the landlord have to wait until the expiration of that term before he could sue his tenant, or surety, for the quarterly rent as it fell due.

6. Language is not capable of expressing with more perspicuity the intention of the parties, and it is strange that an agreement for the punctual payment of the rent and the performance of the covenant, and providing expressly for the event which happened, could be made susceptible of so strained a construction as the counsel puts upon it. It can well be said in this case, as was said by the court in *Kearney* v. *Post*, 2 Comst. R. 396 : " The covenant is, we think, perfectly plain ; and unless there is some law that prohibits parties from making their own contracts, the defendant must abide by the one he has voluntarily assumed."

III. The plaintiff, after taking possession of the premises, relet them, at the rate of $600 for the residue of the term, upon the condition that he would first lay out the sum of $200 for a bath, and more than that amount was expended ·for that pur-

pose. Thus, in fact, the rent was at most only at the rate of $400 per annum. The plaintiff, after expending this $200, received from the new tenant, up to the commencement of this action, and at the time it was at issue, the sum of $50. He subsequently, however, received all of it.

1. The plaintiff acted as the agent of the defendant, and it is not pretended that he could have obtained the enhanced rent unless he had first expended the $200.

2. The original rent was $500; the plaintiff, in fact, received only at the rate of $400; but the $50 he so received was allowed the defendant on the quarter's rent for which he was sued.

3. The defendant himself does not deny his liability, for in his answer he says: "And this defendant denies that the said plaintiff or his agent has, or can have any just demand for rent of the said premises, since the time the same were occupied by said plaintiff as before mentioned, and rented by said plaintiff or his agent to another person," referring to the letting by plaintiff to the new tenant on the 1st of October. There is a plain admission of the defendant's liability for the two months prior thereto, and for which only the plaintiff recovered judgment. And to avoid any doubt as to the plain import of his meaning, he also alleges, "that before the commencement of this action he caused to be offered and tendered to the plaintiff's agent and attorney, the amount of the rent of the said demised premises up to the 1st day of September, 1852."

4. The defendant only seeks to be exonerated from one month's rent. He sets up in his answer the following alleged agreement, and on this the whole defence rests: "That the said plaintiff, by his agent, as this defendant is informed and believes, at the time, or about the time, when said William Abbott quit the possession of said demised premises, agreed with said William Abbott, that if the said William Abbott would pay to the plaintiff, or his agent, the rent of the said demised premises up to the 1st day of September, 1852, that then the said William Abbott should not be liable to any further demand from the said plaintiffs, under or on account of the covenants contained in

said lease. . And this defendant says positively that he was informed of the last mentioned agreement between the agent of the plaintiff and said Abbott, by a person, whom deponent is informed is the partner of the plaintiff's agent and attorney, and who called on this defendant to make a demand of rent alleged to be due to the plaintiff."

There was not a particle of testimony tending to show the existence of such an agreement, and it seems now to be a matter of doubt whether it was not inserted in the answer for the purpose of exhibiting the pleader's skill in modern special pleading, and as an exemplification of the fact, that by the Code of Procedure "all the forms of pleading heretofore existing are abolished."

5. The testimony in relation to the reletting and the payment by the new tenant of the month's rent up to the first of November, 1852, so far as payment is concerned, should have been disregarded. It was offered in support of the alleged agreement between the tenant and the landlord, which the defendant failed to prove. If the defendant had pleaded payment or placed his defence on the ground that any part of the quarter's rent had been paid, and the testimony had been offered for that purpose, then the plaintiff would have shown " the expense he was put to on reëntering, and to which the avails of the rent were first to be applied," according to the terms of the agreement. The court ought not to have allowed the $50. " Facts proved and not pleaded are not available to the party proving them." (*Field* v. *The Mayor*, etc. 2 Seld. R. 179.)

INGRAHAM, FIRST J.—The answer in this case denies "upon information and belief" a claim set up by the plaintiff for damages in not keeping premises in repair.

Upon the trial, the judge held the answer to be insufficient on this point, and that the complaint in this respect was not denied.

It is not necessary now to decide what order would be made on a motion to amend this answer, or to strike out the objectionable parts, if such motion had been made. It can hardly

be said that the legislature intended to refuse to a defendant who has no knowledge of the facts (where as in this case he is prosecuted as a surety) the privilege of making a defence, nor can it be supposed that the legislature intended that, to make such a defence, he should swear positively to the denial of a plaintiff's claim, when, from his ignorance on the subject, such a denial sworn to would be perjury, because he was swearing to what he did not know. to be the truth. I am at a loss to see how a defendant can make a defence of what he has been told is the fact, if he has no personal knowledge on the subject, unless he is allowed to say that he makes the denial on information. The Code allows a denial. It does not prohibit the qualification that such a denial is made on information obtained from others, and it virtually allows this mode of answer by retaining the mode of verification by which a party swears the pleading to be true of his own knowledge, except as to what is stated on information and belief, and as to those matters that he believes it to be true. It would be idle to tell a defendant he may make such a verification to his answer, but he may not say in his answer that any denial is on information, etc.

But without pressing this discussion any further, I am of the opinion that the objection to the sufficiency of the answer in this respect should not have been allowed upon the trial. The answer was put in by a defendant who was surety, we must presume in good faith, for the judge says that the plaintiff failed to show any damage whatever, and he allowed the damage claimed, simply on the objection to the answer. If the answer was deemed objectionable, it should have been remedied by motion. It contained a general denial of the claim, and the addition of the words " on information and belief " made it no less a denial. The judge should not have disregarded it on the trial, but tried the issue as the parties made it. The amount allowed for damages in this respect must be stricken out as improperly allowed. The claim for the Croton water tax was also improperly allowed.

By the agreement the tenant agreed to pay for the premises the yearly rent of $500, and the Croton water tax for the said

term, payable quarterly. The lease also contained a covenant that the tenant will pay the charge imposed for the Croton water.

These two covenants are to be taken together, and then they will read that the tenant shall pay $500 annually, and the Croton water charge, to be divided into quarterly payments. As this payment is to be made to the landlord, it would follow that he would be obliged to pay the tax and collect the same with the rent, in quarterly payments, from the tenant. But if the contrary rule should be adopted, that the whole is payable in one charge, then there is nothing in the lease making the same payable in August, and it is not properly chargeable until the end of the term.

In September the plaintiff took possession of the premises, and let them in his own name for the residue of the term. This he had a right to do; but in so letting the premises, he agreed to lay out $200 upon the premises for baths. It can hardly be supposed that under such an agreement the landlord could lay one half or a third of the rent upon the premises for permanent improvements, and throw the expense upon the tenant or his surety. He is only authorized to rent the premises as the tenant held them. If he sees fit to make improvements, and thereby get an enhanced rent, still for the residue of the term the tenant is to be credited with the whole amount of the rent received. The judge only allowed rent for the months of August and September, for which period the premises were not occupied by the new tenant. This action was brought in December, or previously. It does not appear that any rent had become due under the agreement. By the agreement the tenant covenanted, that in case the plaintiff took possession of the premises and relet the same, and did not obtain sufficient rent to make up the amount of rent thereby reserved, the tenant would pay the difference of rent for the residue of the term.

This difference cannot be ascertained until the term is ended. If the whole rent is collected, the deficiency would be $25. The plaintiff recovers here $41 66 for each month, or $83 32.

If there should be a loss of rent, it might be more. At the time of bringing this action, the plaintiff could only recover the deficiency, which was $25. By the testimony of Mr. Hackett, the plaintiff, it appears that the tenant, since the commencement of this action, has paid the whole rent up to the first of May. So that, in fact, the plaintiff is entitled to nothing more than the $25, on a settlement of all the accounts, and it would only lead to a circuity of action, to allow the plaintiff to recover more in this suit, in order that the defendant may recover it back in another. The charge for the Croton water might be added to this amount, as forming part of the deficiency, and would, together, make $33 40. This is all that the plaintiff was entitled to in this action at the time of its commencement.

The judgment should be set aside, and a new trial ordered, unless the plaintiff remits all of the recovery except $32 40; in which case it should be affirmed for that amount.

WOODRUFF, J.—I concur with the first judge in the conclusion that the damages alleged to have been sustained by the plaintiff for want of repairs to the demised premises, ought not to have been allowed. If it be conceded that the form of denial contained in the answer is not warranted by the Code, it would not affect this question; the amount of damages in the complaint is not the proper subject of a denial—it is not issuable matter—it is the breach of the covenant to repair which should be denied, and if that be put in issue it is wholly unnecessary to traverse the allegation that the plaintiff has sustained damage. If the covenant be broken it follows as matter of law that the plaintiff has sustained damage, and if that be not broken, it follows in like manner that the plaintiff has sustain no damage. The amount of damage is not traversable. It must always be proved whether denied or not. On default when no answer is put in, and when of course all traversable averments are taken as admitted by the defendant, the plaintiff must prove the amount of damages sustained or he can recover nominal damages only. So here, if it be conceded that the answer contained no proper denial of the alleged breach of the

covenant to repair, and that the breach is therefore to be taken as admitted, still the plaintiff was bound to show the amount of the damages occasioned thereby, and having failed to do so they ought not to have been allowed to him. (See the like question decided in *Connoss* v. *Meir*, in this court, at the January general term.) (a)

But I think that the judgment at the special term was correct in allowing the amount paid for Croton water rate. The covenant was express to pay the regular annual rent or charge for the Croton water. It was thus admitted to be an annual charge which the defendant was to pay, and he was to pay it to the authorities to whom it was due. In my judgment it formed no part of the quarterly rent which was payable to the plaintiff. The words introduced into the clause in the lease parenthetically, were unnecessary, but were plainly introduced out of abundant caution to show that this tax was to be paid in addition to the $500, which was payable quarterly.

This sum, therefore, was properly allowed to plaintiff, $8 40.

I also agree with the first judge that the plaintiff having undertaken to let the premises in pursuance of the right reserved to him in the lease, is bound to give the defendant the full benefit of the rent received on the reletting, and that he can abate nothing for the expense of improvements; and it appears by the evidence of the plaintiff himself that the premises were relet from the 1st of October to Mrs. Vose, and also that he "received from her up to the 1st of November at the rate of $600 a year rent." The amount thus received he is bound to credit to the defendant if the letting was as his agent, and if not then the liability of the defendant for rent had ceased entirely. I do not agree that the plaintiff could retain this money and yet sue for and collect from the defendant the whole rent payable by him on the 1st November, under a possible apprehension that the new tenant might not pay the rent for the next quarter. So fast as the rent was collected, the defendant was entitled to be credited, so that in truth on the 1st of November,

---

(a) Reported in 2 E. D. Smith, 314.

Hackett *v.* Richards.

the defendant was chargeable with one quarter's rent, at five hundred dollars per annum, $125, and entitled to a credit of one month's rent received of the tenant, $50, leaving a balance due to plaintiff for rent of $75, on that day.

If nothing had in fact been received from the new tenant on the 1st November (which the opinion below appears to assume), and the plaintiff was in no fault for not making the collection, the defendant would have remained liable for the whole rent of the quarter. His indebtedness was fixed and definite. His title to be credited depended upon the ability of the plaintiff to collect rent for the premises for his benefit, and he could have no credit until the rent was paid. So on the other hand, the plaintiff if he had chosen to delay his rent till the end of the year could have had the whole deficiency, if any, determined at once. But having brought his action for the rent due November 1st, he must credit all that he says he received up to that time.

It would seem by the testimony of one of the witnesses, that since this action was commenced and the issue joined, the new tenant has in fact paid the rent for the next two quarters; so that if the account between the parties could now be finally stated and settled in this action, it would stand thus:

| | | |
|---|---|---|
| *Dr.*—To Croton water rate, | | $ 8 40 |
| To 3 years' rent, to May 1, 1853, | | 375 00 |
| | | 383 40 |
| *Cr.*—By rent received from new tenant to 1st Nov. 1852, | 50 00 | |
| By rent, ditto, to May 1, 1853, | 300 00 | |
| | | 350 00 |
| Leaving due to the defendant herein only | | $ 33 40 |

and interest.

Had the defendant thought proper after these last payments were made, to interpose a supplemental answer in the nature of a plea *puis darrein continuance* under § 17 of the Code of Procedure, he might have been allowed these payments made

·after issue joined ; but not having done so, it seems to me that the rights of the parties must be adjusted and settled as they ·existed when the action was commenced.

It is argued, first, that inasmuch as the plaintiff brought his action without waiting until the expiration of the term, he must be treated as having assumed the risk of collecting all subsequent rents to accrue under the reletting, and therefore, the account between the parties, though stated on the day the action commenced, must credit the defendant all that the new tenant had agreed to pay. And second, that the agreement in .the lease, that if the landlord should reënter and should be unable to relet the premises or to obtain sufficient rent to make up the amount reserved, the defendant should pay any loss or deficiency " for the residue of the term," is to be taken as a single covenant to pay a single sum to be determined *at the end of the term* by charging all rents accrued under the original lease, and crediting all rents collected under the reletting.

It seems to me that neither of these propositions is warranted by the fair and just meaning of the argument when construed in connection with the whole subject matter to which it relates.

The defendant had covenanted to pay $500 a year, in quarterly payments. Upon his default, the plaintiff, as his agent, and for his account and benefit, might relet the premises and collect the rent, and the defendant bound himself to pay any deficiency.. To my mind the meaning of .the agreement taken together, was that the plaintiff should have his rent at the *end* of each quarter—and that the plaintiff should have a perfect right to sue for that rent at the end of each quarter, and if *then* he had collected anything on a reletting, he must give credit therefor and for that only. Suppose the lease had twenty years to run. If the plaintiff did not reënter and take possession, then confessedly he could collect his rent quarterly ; and can it be reasonably insisted that if he does reënter, and relet for account of the lessee, that then he must either be satisfied with what he collects and wait the expiration of the twenty

Hackett *v.* Richards.

years before he can collect the residue of the rents which the defendant consented to pay quarterly, or must, on the other hand, if he sue at the end of the first quarter, assume to himself the risk of all subsequent collections from the new tenant. I think not. The landlord is justly entitled to his full rent *quarterly*, and whenever he (acting of course in good faith) fails in any quarter to collect his full rent, the lessee ought, and I think by the fair meaning of the agreement is bound, to make up the deficiency. The agreement to pay the deficiency should be taken to apply severally to each quarterly payment, and the end of each quarter is the time for a settlement between the parties. And although, as before remarked, had the defendant thought proper to set up by supplemental answer the payments made to the plaintiff after issue joined, they should have been allowed, and the recovery limited to $33 40 and interest; he not having done so, the recovery should be governed by the state of the account existing when the answer was put in.

The account with the defendant will therefore stand thus—

| | | |
|---|---:|---:|
| *Dr.*—To Croton water rate, | $ 8 | 40 |
| To rent due 1st November, 1852, | 125 | 00 |
| | 133 | 40 |
| *Cr.*—By one month's rent, at $600, rec'd, | 50 | 00 |
| | $83 | 40 |

No question appears to be raised in respect to interest, and the plaintiff is clearly entitled to interest from the commencement of the suit, I think. If therefore the plaintiff thinks proper to reduce his judgment to that sum and interest and costs, the judgment should be to that extent affirmed without costs to either party on appeal; otherwise the judgment should be reversed and a new trial ordered.

DALY, J.—I concede that I erred upon the trial in holding that the amount of damages was admitted by the

pleadings. Since the trial of this cause, we held, in *Connoss* v. *Meir*, January general term, 1854, that the averment of the amount of damages is not traversable, and that under any state of pleading, the plaintiff, if he seeks to recover more than nominal damages for the breach of the covenant, must show what damages he has sustained; but I still think that the rent received by the plaintiff, for the month of November, should not be credited to the defendant in this action. As it is necessary however that the case should be decided, I agree that the verdict may be reduced to $83 40.

Judgment affirmed, without costs of appeal, provided the plaintiff consents to reduce the judgment to $83 40, and interest and costs of suit. Otherwise, judgment reversed and a new trial ordered.